[Civ. No. 16253. Second Dist., Div. One. Aug. 4, 1948.]

RANDALL CUNNINGHAM, Appellant, v. COCA-COLA BOTTLING COMPANY OF LOS ANGELES, Respondent.

Charles A. Son and Joseph D. Taylor for Appellant.

Schell & Delamer for Respondent.

WHITE, J.—Plaintiff has appealed from a judgment for defendant entered upon the verdict of a jury in an action for damages for personal injuries. The injuries were sustained as the result of an explosion which occurred when the plaintiff lifted the lid of a Coca-Cola vending machine located on the premises of a Union Oil service station where plaintiff was employed as manager. The explosion or eruption was not caused by a bursting bottle, but appeared to emanate from the cooled water in which the bottles of Coca-Cola were submerged. The vending machine was installed on the premises under a contract between Union Oil Company as vendee and Pacific Coast Coca-Cola Bottling Company as vendor, which provided that the vendor's licensee (defendant and respondent Coca-Cola Bottling Company of Los Angeles) would maintain the machine in good repair so long as it was used for the exclusive vending of Coca-Cola.

Plaintiff charged in his complaint that the machine was installed and continuously maintained, supervised and controlled by defendant; that by reason of its "imperfection, defectiveness, unsafety, inadequacy of construction, inspection and supervision, (the machine) became and was a hiddenly defective and dangerous instrumentality"; that it was carelessly and negligently installed and maintained; that when plaintiff was in the act of placing a bottle of Coca-Cola

in the machine, "the liquid in said vending machine had become, through the carelessness and negligence of defendants, and without the knowledge of plaintiff, a powerful and dangerous caustic, and was blown into, upon and against his face, eyes and forehead", inflicting serious and permanent injuries. Defendant denied the charges of negligence and in an amendment to its answer set up the defense of contributory negligence of plaintiff "in the supervision, operation, control and use" of the machine.

It appears that Pacific Coast Bottling Company of Beverly Hills sold a Coca-Cola vending machine to Union Oil Company under a contract which provided that the machine would be supplied with Coca-Cola by defendant and respondent Coca-Cola Bottling Company of Los Angeles, a licensee of Pacific Coast Bottling Company. The machine was operated by electricity, and consisted essentially of a tank, containing water, in which the bottles of the beverage were immersed, and a hermetically sealed cooling unit consisting of a motor, compressor, and pipes containing the refrigerant, which pipes led from the compressor into the tank. The cover of the tank could be locked. The key to the cover was kept in the gasoline station. In the cover was a smaller lid which was not locked. Upon insertion of a coin in the coin receptacle and pulling a lever, the smaller lid could be rotated so that an opening thereunder would come directly above a bottle and the purchaser could remove the same.

Plaintiff testified that on the day of the accident he lifted the cover of the machine in order to place therein a bottle of soft drink which he had purchased for his personal use; that there were then no Coca-Cola bottles or other bottles in the machine; that upon lifting the cover he heard a "click"; that he placed the bottle therein, at the same time feeling the water to ascertain if it was cold; that he then observed bubbles rising from the bottom of the tank, and turned away, but before he could turn away an explosion or eruption occurred, blinding him. There was testimony by a fellow employee and by others that plaintiff told them immediately after the accident that "something fell in the water"; while plaintiff at the trial testified that he did not see anything fall into the water. It was the theory of defendants, supported by expert testimony, that some prankster had placed a piece of sodium in the lid or cover of the machine so that it fell into the water when the cover was opened, resulting in the explosion; while plaintiff sought to show by expert testimony that the explosion

resulted from improper maintenance, in that the insulation of the 110-volt wires leading to the motor was abraded by vibration; that there were bottle caps, slugs and coins in the tank; that by means of "voltaic action" or leakage of the refrigerant from the coils, or both, hydrogen was liberated in the tank and ignited by electricity from the 110-volt line or by an accumulation of electro-static electricity. Defendant's experts testified that they found sodium hydroxide in matter which appeared to have splattered on the window of the station. If the explosion were caused by hydrogen being ignited by a spark there would be no residue of sodium hydroxide. There was expert testimony that the refrigerant used in the cooling unit is noncorrosive and noninflammable and will not react with water to give off hydrogen. If the refrigerant leaked from the tubing with sufficient rapidity to cause bubbles in the water, it would all escape within 48 hours. It further appeared from the evidence that for at least a year after the explosion the machine continued to be used without repairs and operated normally.

It is contended that the following instructions were inconsistent with the instructions on res ipsa loquitur and that the giving of them constituted prejudicial error:

"The only duty resting on the defendant in this case was to use ordinary care to see that when it delivered the cooler to plaintiff's employer and later when it serviced the cooler, the said cooler was not in such condition that in its normal use it would become dangerous to those in its vicinity. Consequently, unless the plaintiff has established by a preponderance of the evidence that the defendant failed in some *specific* manner to use such reasonable care and that such failure was a proximate cause of plaintiff's injuries, the plaintiff cannot recover." (Italics added.)

"The defendant is not responsible for any condition caused while the cooler was in the possession of another and of which it had no notice of, or in the exercise of ordinary care would not have known and would not have discovered by reasonable inspection in the exercise of ordinary care."

Appellant contends that in the giving of the first-quoted instruction the court departed from the rule of res ipsa loquitur, in that under such rule the plaintiff is not required to prove a specific act of negligence; and that by the second quoted instruction the court confined the duty of defendant to use care when the cooler was delivered and when it was serviced, without regard to the need for service or inspection at other times.

■ The first challenged instruction was correct, and plaintiff was not prejudicially affected thereby, because, under the undisputed facts present in this case the doctrine of res ipsa loquitur had no application, and instructions thereon should not have been given. Had a verdict for plaintiff been rendered, a judgment entered thereon could not be sustained, by reason of the error committed in giving the jury instructions on the doctrine of res ipsa loquitur. ■ Before the doctrine can be applied, the thing or instrumentality must be shown to be under the exclusive control and management of the defendant. (*White* v. *Spreckels,* 10 Cal.App. 287 [101 P. 920] ; *Judson* v. *Giant Powder Co.,* 107 Cal. 549 [40 P. 1020, 48 Am.St.Rep. 146, 29 L.R.A. 718].) Such control is not limited to actual control, but applies to the right of control of the instrumentality which causes the injury (*Metz* v. *Southern Pacific Co.,* 51 Cal.App.2d 260 [124 P.2d 670]). ■ In the present case, defendant's control or right of control of the instrumentality was limited to providing proper maintenance or repairs. The instrumentality was the property of the Union Oil Company, and was kept on premises of the Union Oil Company. Employees of the Union Oil Company kept the machine filled with water, connected and disconnected it from the electric line at their convenience, refilled it with soft drinks from time to time. The key to unlock the cover of the machine was kept at the station. When the station was closed at night the unsold bottles were removed, but the machine was left unlocked on the premises; it was not moved into the station building, but was left outside, accessible to any person who might come upon the station premises.

In *Hubbert* v. *Aztec Brewing Co.,* 26 Cal.App.2d 664, 688 [80 P.2d 185, 1016] (hearing denied by Supreme Court), it was said, quoting from *Biddlecomb* v. *Haydon,* 4 Cal.App.2d 361 [40 P.2d 873] (hearing denied by Supreme Court) :

"The rule of *res ipsa loquitur* does not apply unless the instrumentality causing the injury is shown to have been under the exclusive control or management of the one sought to be charged with responsibility therefor. Neither does it apply where the cause of the accident is unexplained and might have been due to one of several causes for some of which the defendant is not responsible. (*Brown* v. *Board of Trustees,* 41 Cal. App. 100 [182 P. 316] ; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206 [263 P. 518, 58 A.L.R. 129].) In *Scellars* v. *Universal Service,* 68 Cal.App. 252 [228 P. 879], the court quotes with

approval from the case of *Lucid* v. *E. I. DuPont etc. Powder Co.*, 199 F. 377 [L.R.A. 1917E 182, 148 C.C.A. 16], where the court said: 'The doctrine of *res ipsa loquitur* involves an exception to the general rule that negligence must be affirmatively shown, and is not to be inferred, and the doctrine is to be applied only when the nature of the accident itself, not only supports the inference of the defendant's negligence, but excludes all others.' . . .''

 Therefore, in the case at bar the doctrine of res ipsa loquitur can have no application where the cause of the injury is under the management and control of the plaintiff, nor can it apply to a case having a divided responsibility where an unexplained accident may have been attributable to one of several causes, for some of which the defendant is not responsible; and when it appears that the injury was caused by one of two causes for one of which defendant is responsible, but not for the other, plaintiff must fail if the evidence does not show that the injury was the result of the former cause, or leaves it as probable that it was caused by one or the other. (*Gerhart* v. *Southern Calif. Gas Co.*, 56 Cal.App.2d 425, 431, 432 [132 P.2d 874], and cases cited.)

The defendant had no control or right of control over the machine. It had only a duty of inspection and maintenance. The most painstaking performance of such duty could not prevent an accident resulting from the introduction of an inflammable or explosive substance into the water in the tank of the machine. The state of the evidence was such that the jury could conclude that it was at least as probable that the accident was the result of the activities of some unknown person in arranging to have a piece of sodium fall in the tank as that it was caused by any defect in the machine itself.

 The second instruction under attack contained a proper exposition of the law under the issues raised by plaintiff's complaint, that the machine was negligently installed and maintained.

As indicated above, the instructions given were more favorable to plaintiff than he was justly entitled to under the law. From the instructions as given the jury could not fail to understand that from the happening of the accident they were entitled to draw an inference, under the erroneously given instructions as to the doctrine of res ipsa loquitur, that the machine was negligently installed or maintained, subject, of course, to the given admonition that they "should weigh any

evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise ordinary care and diligence, or that the accident occurred without being proximately caused by a failure of duty on its part.''

■ Appellant next complains of an instruction reading as follows:

''Plaintiff alleges that by reason of the carelessness and negligence of the defendant, a powerful and dangerous caustic was blown into, upon and against his face, eyes and forehead. The burden of proof is on the plaintiff to prove these allegations, and if plaintiff fails to prove such allegations by a preponderance of the evidence, the plaintiff cannot recover and your verdict must be in favor of the defendant.''

Although admitting that the instruction correctly stated the charge in the complaint, appellant asserts that he departed from this theory at the trial, contending that the explosion was caused by hydrogen gas; that the instruction required him to prove contentions made not by him but by the defendant, placed an impossible burden on plaintiff and confused and misled the jury. For the reasons heretofore stated it must be held that the error, if any, does not warrant a reversal.

The jury was further advised, ''You are not to single out any certain sentence,, or any individual point or instruction, and ignore the others, but you are to consider all the instructions as a whole, and treat each in the light of all the others. The order in which the instructions are given has no significance as to their relative importance.''

■ Bearing in mind the well-settled rule that instructions must be considered as a whole, it must be held that in seeking to predicate error upon a single instruction, or portions of an instruction singled out from the context of the entire charge to the jury, plaintiff has not met the burden imposed upon him to show not only legal error, but error affecting his substantial rights.

■ It must also be held that it was not error for the court to instruct the jury upon contributory negligence, for the reason that under the facts hereinbefore set forth with respect to the custody and control of the vending machine, the jury might properly have concluded that plaintiff as manager of the station was negligent in leaving the machine out-of-doors and accessible during the hours when the station was closed.,

A reading of the record discloses that defendant offered clear and convincing evidence that the explosion was caused by sodium and could not have been caused by any defect, electrical or mechanical, in the machine. The rebuttal evidence offered by plaintiff, in an attempt to show that the explosion was the result of a leakage of the gas refrigerant from the tubing in the tank plus decomposition of the refrigerant in the presence of oil, grease and water to produce hydrogen gas, and accompanied by an electric current or spark resulting from abraded insulation and ''voltaic action'' in the water of the tank due to the presence of slugs and bottle caps therein, was considerably weakened by cross-examination, from which it was shown that plaintiff's expert witness did not examine the machine until six months after the accident (as heretofore noted, the machine operated normally for at least a year after the accident, without repairs). There was no evidence as to the presence of slugs or bottle caps in the water at the time of the explosion, nor any evidence as to the condition of the wires or tubing at that time. Although plaintiff's expert witness testified to an abraded condition of the insulation, he made no tests to determine whether there was actually any electrical leakage. In the face of the foregoing, the most that can be said is that the testimony was in conflict and presented a factual situation for determination by the jury; and under well-established rules, we are not authorized to disturb the determination arrived at by the duly constituted arbiters of the facts unless we can say, as a matter of law, that it rests upon no substantial evidence at all. Such is not the situation presented by the record in the case now engaging our attention.

The conclusions at which we have arrived render it unnecessary to determine whether, as contended by respondent, it was relieved of all duty of maintenance under its contracts because for a period the machine was not used exclusively for the vending of Coca-Cola. Plaintiff testified that other products were placed in or dispensed from the machine for a period, but later modified his testimony to state that no other products were sold, but that the employees placed other soft drink products purchased for their own use in the machine from time to time. It was contended by appellant that this practice was permitted under a clause of the contracts. No such clause appears in the contracts in evidence.

For the reasons stated, the judgment is affirmed.

York, P. J., and Doran, J., concurred.