[Civ. No. 236. Fifth Dist. Aug. 15, 1963.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC
WORKS, Plaintiff and Respondent, v. JOHN H. EDGAR
et al., Defendants and Appellants.

Thomas H. Werdel, Baker, Palmer, Wall & Raymond and Stephen E. Wall for Defendants and Appellants.

Holloway Jones, Jack M. Howard, Norval Fairman and David T. Hayden for Plaintiff and Respondent.

CONLEY, P. J.—Disappointed in the amount of damages awarded them in eminent domain proceedings, particularly because the jury and the court found that the value of the special benefits far exceeded the severance damages, the defendants, John H. Edgar and his wife, Ruby Dale Edgar, appeal from a judgment for $4,236 and costs in their favor. The defendants were the owners of 19.78 acres with a frontage of 660.7 feet on the Taft Highway, a state highway, located some 8 miles south of the Bakersfield courthouse near where the new routing of Highway 99 crosses it. Defendants' property is approximately 650 feet west of the intersection of Taft Highway and Kern Island Road, the next intersecting county road to the east, and about 1,300 feet north

of Curnow Road, a county road running parallel to Taft Highway to the south of both Taft Highway and the southern boundary of the subject property. The next intersecting county road to the west along Taft Highway is Wible Road. Immediate possession of the situs was obtained through proper court order, and at the time of the trial the new segment of Highway 99, the interchange with Taft Highway and the access road across the property of defendants had been constructed.

In its "after" condition the property consists of two remainders, the easterly being 11.868 acres in extent, fronting on the Taft Highway but with no direct access from that frontage onto the Taft Highway, such direct access having been replaced with approximately 1,263.60 feet of direct access on a new frontage road through the property of the defendants constructed by plaintiff as part of the improvement, of about 60 feet in width, with an entrance from such frontage road into Taft Highway. Similarly, the direct access to Taft Highway of the frontage of the western remainder has been taken, but it has been replaced by approximately 1,253.23 feet of direct access on the new frontage road, which, as above stated, enters Taft Highway. Both of these remainders are now corner properties, the eastern remainder comprising the southeast corner of Taft Highway and the frontage road, and the western remainder comprising the southwest corner of Taft Highway and the frontage road. In the "after" condition the next intersecting road to the north of the frontage road upon which both remainders have direct access by means of the frontage road is Taft Highway; to the south the next intersecting road is Curnow Road.

As required by the applicable code section (Code Civ. Proc., § 1248), the jury's verdict gives the following answers: 1. The value of parcels 9a and 9b (the latter being the underlying ownership in the highway adjoining the land of the defendants in the "before" condition) with improvements is the sum of $4,236; 2. Damages by reason of severance $1,292; 3. Special benefits which will accrue to the said remaining property by reason of the construction of the improvement by plaintiff are the sum of $39,136. As the value of the special benefits far exceeded the severance damages (Code Civ. Proc., § 1248, subd. 3), the judgment was limited to the value of the land taken, or $4,236, besides costs.

Appellants do not complain of the award for the value of

the land taken; they raise only two points on the appeal, both of which relate to the finding as to special benefits: first, it is contended that the evidence did not warrant such a finding; secondly, it is claimed that the court committed fatal error in not giving one instruction in the exact wording proposed by the appellants.

With respect to the claim that the evidence does not justify the finding, two expert witnesses for the People, Olsen and Carpenter, each testified that the placing of the frontage roadway diagonally through defendants' property divided it into areas ideally suited for the installation of service stations; that the sites therefor were each of a reasonable market value of $40,000 or $50,000 and that the remaining land could also be used profitably for homesites or store properties, so that the defendants were greatly benefited by the construction of the improvement.

In 17 California Jurisprudence 2d, Eminent Domain, section 113, pages 683-684, it is said: "General benefits are such advantages of a conjectural nature, and therefore not suitable for estimation, as result in an increase in land values all over the community in which the condemned property is located. Special benefits, on the other hand, are such advantages, reasonably certain to result, as are peculiar to the property condemned."

Benefits resulting from improved access and the better accommodation of transportation constitute special benefits for which an allowance by a jury in eminent domain proceedings is proper. (*County of Los Angeles* v. *Marblehead Land Co.*, 95 Cal.App. 602, 614-615 [273 P. 131]; *City of Hayward* v. *Unger*, 194 Cal.App.2d 516 [15 Cal.Rptr. 301]; *Bacich* v. *Board of Control*, 23 Cal.2d 343, 352 [144 P.2d 818].) A similar situation is thus discussed in *County of Los Angeles* v. *Marblehead Land Co.*, *supra*, at pages 614-615:

"Examination of the testimony shows that several witnesses, who were apparently competent and well informed, were of the opinion that the severance damage amounted to sums which were less than the amount subsequently established by the findings of the court. These witnesses were quite uniform in their opinion that the benefits to the portion of the ranch not taken, by reason of the construction of improvements, were many times as much as the amount stated in the findings of the court. We think that the evidence is sufficient

to sustain these findings. It follows that on this branch of the case appellants have no ground of complaint, unless it be made to appear that said benefits were only a part of the general benefits and advantages accruing to the community, and were not benefits special and peculiar to the property of defendants not included in the condemnation. Numerous authorities on the subject were cited in the briefs and in the oral argument. The law in this state covering the question here presented is definitely stated in *Beveridge* v. *Lewis,* 137 Cal. 619 [67 P. 1040, 70 P. 1083, 92 Am.St.Rep. 188, 59 L.R.A. 581]. It was there pointed out that general benefits consist in an increase in the value of land, common to the community generally, and resulting from advantages which will accrue to the community from the improvement. Special benefits, on the other hand, are such as result from the mere construction of the improvement, and are peculiar to the land in question. These special benefits must be such as are reasonably certain to result from the construction of the work. So far as we are advised, the rule or principle thus announced in *Beveridge* v. *Lewis* [*supra*] has not been modified by later decisions.

"The witnesses who testified in favor of the plaintiff on this question were of the opinion that, in addition to the general benefits, there were special benefits which would result from the construction of this highway, and that these benefits were peculiar to the property of defendants. The witness Butterworth, after stating that the market value of the land taken would be greatly increased by the laying out and construction of the highway, stated that he had in mind both the benefit that would result from access and transportation facilities, and also the benefit to the frontage upon the highway and added value that would accrue to land fronting thereon if the highway was put through. He further stated that these benefits to the ranch, and this increase in market value as a result of the construction of the highway, were in his mind separate and apart from the general benefit which the entire district would receive. The testimony of the witness Benedict, and of others, is of like effect. It is not denied by appellants that under the provisions of article I, section 14, of the [C]onstitution of the [S]tate of California, benefits which are special and peculiar to the property affected may be set off against damages to the portion not taken, whenever the plaintiff is a municipal corporation or a county."

 `Appellants urge that because it is thinkable that at some time in the future the state might exercise its right to change the flow of vehicles to some other roadway, or to put a divider strip in the Taft Highway or otherwise regulate traffic in a manner which would constitute a derogatory change from the present plans, there would be no special benefits. However, the trial court correctly instructed the jury that:

"You must presume that the improvement put upon the land taken will conform to the plans and diagrams herein evidenced, and you must, once and for all, fix the damages, present and prospective, that will accrue reasonably from the construction and presence of the improvement, and in this connection you must consider the most injurious use to which the condemnor may lawfully put the property."

The cases of *People* v. *Adamson*, 118 Cal.App.2d 714, 721, 723 [258 P.2d 1020]; *People* ex rel. *Department of Public Works* v. *Schultz Co.*, 123 Cal.App.2d 925, 932-933 [268 P.2d 117]; and *People* v. *Ayon*, 54 Cal.2d 217, 229 [5 Cal.Rptr. 151, 352 P.2d 519], as well as the wording of section 1248 of the Code of Civil Procedure, subdivisions 2 and 3, all establish the basic rule that in awarding damages in a condemnation case the jury must act upon the assumption that the improvement will be carried out as proposed.

 As stated in *People* v. *Thomas*, 108 Cal.App.2d 832, 837-839 [239 P.2d 914], special benefits to be deducted from severance damages must be assessed as of the time of the taking of the property, and the mere possibility that the benefits might subsequently be terminated by the condemner does not preclude the deduction of the benefit although it may properly be considered in determining its present value. The defendants in this case did not introduce any evidence tending to show a reasonable probability of future implementation of police power regulations restricting the value of defendants' new access rights, nor did they ask for any special instructions on that theory to the effect that in arriving at the present monetary value of the special benefits the jury could consider the likelihood, if any, that the access rights would be changed in the future.

 It seems clear to us that there is ample legitimate evidence to support the jury's finding that the value of the special benefits far exceeded the value of the severance damages.

■ We turn to the only remaining point made by appellants, namely, the contention that the court erred in eliminating the last sentence of the following proposed instruction:

"You are instructed that a special benefit is only one that is special and peculiar to the remaining property of the defendant and is not a benefit that is received generally by property owners in the area. A special benefit is one that is reasonably certain to result from the construction of the improvement in the particular manner proposed. A mere possibility is not sufficient. Benefits resulting from other sources, such as the development of new business activities in the area, prospective growth in population, or in the trend in the market value of land in the area, if there be any, are not special benefits. Any increase in value from such sources is to be considered in the value of the land taken but is not to be included in your determination of special benefits. Your verdict as to fair market value may be based in part upon factors influencing the value of all properties in the vicinity; however, your verdict with respect to special benefits may not be founded upon such considerations, but must be restricted to the precise limits of the remaining property of the defendant. *A special benefit is one in which the property owner will acquire some proprietary right or interest, which, if it were taken away, destroyed, or altered by the plaintiffs in future years, would entitle the defendants to further compensation for its loss.*"

(The eliminated portion of the proposed instruction is in italics.)

Defendants' idea as to the form of this suggested instruction was evidently derived from page 267 of California Condemnation Practice (Cont. Ed. Bar). The author cites in support of his advocated instruction *Beveridge* v. *Lewis,* 137 Cal. 619, 624-626 [67 P. 1040, 70 P. 1083, 92 Am.St.Rep. 188, 58 L.R.A. 581], and *People* v. *Loop,* 127 Cal.App.2d 786, 804 [274 P.2d 885]. But a reading of these two cases does not support the inclusion of the specific rule excised by the trial court. The eliminated language was properly omitted; as we have already seen, there may be a special benefit to a defendant justifying an offset against a monetary award to him for severance damages without the actual acquisition of a proprietary right which, if later altered by the plaintiff, would entitle him to compensation for its loss. For example, the future rerouting of traffic which had originally constituted a special

benefit would not result in the loss of a proprietary right and would not entitle a defendant to further compensation.

The question whether it is necessary to create a vested property right before a benefit could qualify as a special benefit under subdivision 3 of section 1248 of the Code of Civil Procedure was decided contrary to appellants' argument in *People* v. *Thomas, supra,* 108 Cal.App.2d 832, 838-839, where it was held that the fact that the property owner would obtain no vested right in a benefit did not prevent such benefit from having a monetary value if it qualified under the definition of special benefits laid down in the *Beveridge* case, *supra,* 137 Cal. 619, 624. (See also *Los Angeles County Flood etc. Dist.* v. *McNulty,* 59 Cal.2d 333, 338-339 [29 Cal.Rptr. 13, 379 P.2d 493].)

In our view, the court's instructions were full and complete on the subject of special benefits. In addition to the instructions above set forth, the court's charge on the subject was as follows:

"A person who owns land which abuts on a highway has two kinds of rights in that highway. One group of rights are those he enjoys with all other persons or with the general public. These rights are of no concern to us in these proceedings for they have no relationship to the market value of the property itself. In addition to those rights, however, the abutting owner has certain private rights that arise from his ownership of property next to the highway and that are not common to the public generally. These rights include the right to get into and out of the property in a safe, reasonable and customary manner, considering all of the purposes and uses to which the property is adaptable and for which it is available. This is called a right of access, or a right of ingress and egress."

"You should also ascertain and assess separately how much the remaining property of the defendants will be specially benefited, if at all, by the construction of the improvement. If such special benefit shall be equal to or shall exceed the damage, if any, which you find will accrue to such remaining property by reason of its severance and the construction of the improvement, the defendants will not be entitled to be compensated except for the market value of the property acquired. If such special benefit shall be less than the damage so assessed, it will be deducted from such damage by the Court and the remainder will be the damage, if any,

allowed the defendants in addition to the value of the property actually sought to be acquired.''

It should be noted further that the elimination of the last sentence of the proposed instruction could not possibly have been prejudicial, even if erroneous, for the expert wit-witnesses who testified with respect to the enhancement in value of the subject property as a result of the construction of the improvement did not include any element which would have been eliminated by the last sentence in the proposed instruction. Their estimate of increased value was based squarely upon the improved access rights furnished to the remaining property by the new frontage road with its connection to Taft Highway and to Curnow Road, and if this access should later be taken away by the state, further payments through a new condemnation action would become due and payable. (*People* v. *Ayon, supra,* 54 Cal.2d 217, 229.)

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.